[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 26, 2009
THOMAS K. KAHN
CLERK

_____

No. 08-13884

_____

D. C. Docket No. 06-00088-CR-FTM-29-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ISAAC L. MARION, JR.,

Defendant-Appellee

PATRICIA A. GRAY,

Third-Party-Claimant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 26, 2009)

Before BIRCH, HULL and FAY, Circuit Judges.

PER CURIAM:

This appeal by the United States government involves interpretation of the criminal forfeiture provisions in 21 U.S.C. § 853 and Federal Rule of Criminal Procedure 32.2. At issue is the timeliness of Patricia Gray's third-party petition asserting a claim in properties subject to forfeiture. The government contends that Gray's petition was untimely because it was not filed within thirty days of her receiving notice of the preliminary order of forfeiture. The district court disagreed on grounds that the petition was filed within thirty days from the date that criminal judgment was entered against the defendant, Isaac L. Marion, Jr. ("Marion"). Furthermore, the district court concluded that the government had waived the issue of untimeliness and that its motion to dismiss was itself untimely. Upon thorough consideration of the record, the parties' briefs, and oral arguments, we find reversible error and REVERSE AND REMAND.

## I. BACKGROUND

Patricia Gray is Isaac Marion's grandmother. Marion pled guilty in early 2007 to conspiracy to possess with intent to distribute cocaine from at least December 2000 through 18 December 2005. After Marion's guilty plea but before he was sentenced, the government filed a motion for a preliminary order of forfeiture as to two properties identified in the indictment that were allegedly

2

bought with his drug proceeds: (1) 862 Zana Drive, Fort Myers, Florida, and (2) 856 Zana Drive, Fort Myers, Florida. Marion did not file a response.

On 6 June 2007, the district court granted the government's motion and entered a preliminary order of forfeiture as to both properties. The court specifically found that "the United States has met its burden of establishing the sufficiency of the *nexus* between the offense and the property sought for forfeiture." R1-159 at 1. Accordingly, "all right, title and interest" of Marion in the Zana Drive properties were forfeited to the government. Id. at 2.

The government then provided direct written notice of the preliminary order of forfeiture to all known interested persons. On 18 June 2007, Gray received by certified mail written notices at both Zana Drive homes. Each notice informed Gray that pursuant to Federal Rule of Criminal Procedure 32.2(c) and 21 U.S.C. § 853(n), she must file a petition within thirty days of receipt of the notice if she claimed a legal interest in the forfeited property. Additionally, the notices advised that, "If you fail to file a petition with the [district court], judgment of default may be taken against you, and any interest you may have in the property would be lost forever and forfeited to the United States." R2-239, Exh. D2 at 2; R2-239, Exh. D3 at 2. The government also published notice of the preliminary order of forfeiture in a local newspaper on three occasions, with the last date being 3 July

3

2007.

On 19 September 2007, the court sentenced Marion to 132 months of imprisonment for his conspiracy conviction and ordered the forfeiture of both Zana Drive properties.[1]  It was not until 4 October 2007, three and a half months after receiving her notices, that Gray filed a petition claiming an interest in each Zana Drive property.

The district court scheduled an ancillary hearing to adjudicate Gray's third-party claims.  The hearing date was twice postponed, the first time on the government's motion for a continuance so that the parties could conduct discovery. On 28 December 2007, the government moved to dismiss the petition as untimely on grounds that Gray had filed the petition more than thirty days after receiving notices of the preliminary order of forfeiture.  On 8 and 9 January 2008, the court

---

[1]Marion's Presentence Investigation Report ("PSI") stated the following facts regarding Marion's conversations with a Confidential Source ("CS") about the Zana Drive Properties:

> The CS was told many times by Marion, Jr. that he invested his drug proceeds in real estate.  Marion, Jr. had taken the CS to see two of the houses he was building in Fort Myers, and these homes were described as 856 and 862 Zana Drive.  Marion, Jr. explained to the CS that these houses were not in his name, but rather in his mother's and other relatives' names, and that he had paid cash for these houses.

Presentence Investigation Report at 5.  At sentencing, Marion claimed he had no interest in the Zana Drive properties.  Over Marion's objection, the district court adopted the facts from the PSI, sentenced Marion to 132 months of imprisonment, and forfeited Marion's interest in the Zana Drive properties to the government.  Marion appealed his sentence, but only as to the three-level role enhancement.  We affirmed his sentence.  United States v. Marion, 280 Fed. Appx. 917, 920 (11th Cir. 2008) (per curiam) (unpublished).

conducted an ancillary hearing on Gray's petition.

On 16 January 2008, the district court entered an order denying the government's motion to dismiss Gray's petition as untimely. First, the court found that the government had waived the issue of untimeliness because it failed to mention this issue in its motion for continuance of the ancillary hearing. Second, the court found that the government's motion was itself untimely. The court noted that Rule 32.2(c)(1)(A), (B) suggests that a motion to dismiss should be filed before the discovery process and the ancillary hearing, whereas the government filed its motion after the first two scheduled hearing dates. Finally, the court found that Gray's petition was filed within thirty days of 19 September 2007, the date that criminal judgment was entered against Marion and the government had obtained any interest of Marion's in the properties. The court opined, "Obviously, there could be no ancillary hearing until the government obtained the interest from [Marion]." R3-253 at 7. The court further found no prejudice to the government as a result of the petition's filing date and therefore denied the government's motion to dismiss.

Additionally, the district court granted Gray's petition on grounds that her interest in the Zana Drive properties was superior to the government's interest. The government contended that Marion used drug proceeds to purchase the Zana

5

Drive properties, that Gray was a nominee owner for him, and that Gray had not shown a legitimate source of funds for her purchase of the properties. The government's trial brief pointed out that Marion had told a CS that he liked to invest drug proceeds in real estate and had placed the properties in the names of his grandmother and other relatives. Marion also had shown a CS the Zana Drive properties as properties he owned. The district court rejected the government's argument based on its findings that Gray was the legal title holder of the Zana Drive properties, that she was presumed to be the owner of the Zana Drive properties under Florida law as the legal title holder, and that "[w]hile the evidence was not sufficient to determine precisely how petitioner financed the purchase and construction, the government failed to produce evidence establishing a lack of legitimate potential sources of money for petitioner's use." Id. at 20. The court subsequently amended the preliminary order of forfeiture to reflect that Gray had a legal right, title, and interest in both properties as the legal owner.[2]

The government filed a motion to amend the judgment pursuant to Federal

---

[2]The government also appeals the district court's grant of Gray's petition on grounds that the court ignored its record evidence that Marion had admitted the nexus between his drug proceeds and the Zana Drive properties, see 21 U.S.C. § 853(n)(5) ("In addition to testimony and evidence presented at the hearing, the court shall consider the relevant portions of the record of the criminal case which resulted in the order of forfeiture."), and erroneously shifted the burden of proof to the government at the ancillary hearing to show Gray did not have a legitimate source of funds to purchase the Zana Drive properties, see id. § 853(n)(6)(A) (stating that the petitioner has the burden of proof by a preponderance of the evidence). We need not reach these issues based on our decision concerning the motion to dismiss.

Rule of Civil Procedure 59(e), which the district court denied. The government now appeals the order denying its motion to dismiss and granting Gray's third-party petition as well as the order denying its motion to amend the judgment.

## II. DISCUSSION

We review a district court's legal conclusions regarding third-party claims to criminally forfeited property de novo and its factual findings for clear error. See United States v. Watkins, 320 F.3d 1279, 1281 (11th Cir. 2003). We will affirm the denial of a motion to amend the judgment absent an abuse of discretion. See Arthur v. King, 500 F.3d 1335, 1343 (11th Cir. 2007) (per curiam), cert. denied, ___ U.S. ___, 128 S. Ct. 660 (2007). "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact." Id. (quotation marks and citation omitted).

The Zana Drive properties were initially forfeited to the government pursuant to 21 U.S.C. § 853. That statute provides that any person convicted of a drug-law violation punishable by more than one year of imprisonment "shall forfeit to the United States . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation." 21 U.S.C. § 853(a)(1). Third-party interests in the properties are governed, inter alia, by the following provisions:

7

(1) Following the entry of an order of forfeiture under this section, the United States shall publish notice of the order and of its intent to dispose of the property in such manner as the Attorney General may direct. The Government may also, to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified.

(2) Any person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States pursuant to this section **may, within thirty days of the final publication of notice or his receipt of notice under paragraph (1), whichever is earlier**, petition the court for a hearing to adjudicate the validity of his alleged interest in the property. The hearing shall be held before the court alone, without a jury.

Id. § 853(n)(1), (2) (emphasis added). Thus, the statute establishes a thirty-day window during which any third parties who wish to assert an interest in criminally forfeited property must file a petition for a hearing. Id. § 853(n)(2).

In addition to the latter statute, Federal Rule of Criminal Procedure 32.2 outlines the procedure a court must follow for criminal forfeitures. See Fed. R. Crim. P. 32(k)(2). Rule 32.2 requires the court to determine what property is subject to forfeiture "[a]s soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted." Id. 32.2(b)(1). For specific property, this determination is based on the government's establishment of a nexus

8

between the property and the offense. See id. Once this determination has been made, the court "must promptly enter a preliminary order of forfeiture . . . directing the forfeiture of specific property without regard to any third party's interest in all or part of it." Id. 32.2(b)(2). At sentencing (or any time before if the defendant consents), the preliminary order of forfeiture "becomes final as to the defendant and must be made a part of the sentence and be included in the judgment." Id. 32.2(b)(3).

The court can only determine whether a third party has an interest in the property if she files a claim in an ancillary proceeding under Rule 32.2(c). See id. 32.2(b)(2). The government is authorized to begin ancillary proceedings when the court enters its preliminary order of forfeiture. See id. 32.2(b)(3) ("The entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to seize the specific property subject to forfeiture . . . and to commence proceedings that comply with any statutes governing third-party rights." ); see also United States v. Petrie, 302 F.3d 1280, 1284 (11th Cir. 2002). At the ancillary proceeding, the court may rule on a motion to dismiss the petition for lack of standing, failure to state a claim, or "for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). After the ancillary proceeding, the court "must enter a final order of forfeiture by amending the preliminary order of forfeiture as necessary to account for any third-

9

party rights." Id. 32.2(c)(2). "If no third party files a timely petition, the preliminary order becomes the final order of forfeiture if the court finds that the defendant . . . had an interest in the property that is forfeitable under the applicable statute." Id. Once the final order has been entered, neither the defendant nor a third party may object on the ground that the third party had an interest in the property. See id.

A. Timeliness of Gray's Petition

An initial point of contention is whether the thirty-day rule for filing a third-party petition is mandatory. Gray maintains that it is not because § 853(n)(2) states that a third party "may" petition the court within the specified thirty-day time period and Rule 32.2(c)(1)(A) provides that a district court "may" dismiss a petition for any lawful reason. 21 U.S.C. § 853(n)(2); Fed. R. Crim. P. 32.2(c)(1)(A). According to Gray, the use of the word "may" instead of "must" renders the thirty-day rule optional. The government acknowledges that a third party cannot be forced to file a claim within the thirty-day period but maintains that the failure to do so will extinguish that third party's rights.

Both the forfeiture statute and Rule 32.2 support the government's position. Under the statute, if no third-party petitions are filed, the United States obtains clear title to the property "following the expiration of the period provided in

10

paragraph (2) for the filing of such petitions." 21 U.S.C. § 853(n)(7). Likewise, Rule 32.2(c)(2) provides that a third party who fails to file a timely petition may not object when the preliminary order of forfeiture becomes the final order of forfeiture. See Fed. R. Crim. P. 32(c)(2); see also Fed. R. Crim. P. 32.2 advisory committee notes (2000 Adoption) (stating that Rule 32.2(c)(2) preserves the established tenet of current law that "if a third party has notice of the forfeiture but fails to file a timely claim, his or her interests are extinguished, and may not be recognized when the court enters the final order of forfeiture"). Taken together, these provisions mean that if a third party desires to assert an interest in forfeitable property, she may do so by filing a sworn petition "within thirty days of the publication of the impending forfeiture or of the third party actually receiving notice of the impending forfeiture, whichever is earlier." United States v. Soreide, 461 F.3d 1351, 1355 (11th Cir. 2006) (per curiam). If a third party chooses not to file a petition within the prescribed thirty days, however, she forfeits her interests in the property.[3] See id. (concluding that a third party could not assert a claim of a superior interest in the forfeited property because it was belatedly raised); United States v. Grossman, 501 F.3d 846, 848-49 (7th Cir. 2007) (affirming dismissal for untimeliness of a third-party petition filed five months after the party received

_____

[3]In addition, we see no reason why Congress would specify a thirty-day period for filing third-party petitions but make it optional to comply with that narrow window.

11

notice of the preliminary forfeiture order), cert. denied, ___ U.S. ___, 128 S. Ct. 1098 (2008).

This brings us to the central dispute in this case – whether the thirty-day period prescribed in § 853(n)(2) can be triggered by notice of a preliminary order of forfeiture entered before sentencing or only by notice of a forfeiture entered in conjunction with a criminal judgment at the time of sentencing. The district court focused on the latter, which meant that Gray's thirty-day period started running when criminal judgment was entered against Marion on 19 September 2007.[4]

We begin with the criminal forfeiture statute itself, 21 U.S.C. § 853. The sections pertaining to third-party notification and the thirty-day filing period refer only to "an order of forfeiture" or "property which has been ordered forfeited." See 21 U.S.C. § 853(n)(1), (2). Section 853(n) does not distinguish between a preliminary order of forfeiture and a final order of forfeiture entered at sentencing. See id. The statute alone does not plainly answer the question of whether the government's obligation to publish notice of a forfeiture order (and, in turn, third parties' thirty-day window to disclaim their interest) is triggered by the preliminary

---

[4]Although the district court focused on the date that criminal judgment was entered, the statute requires the court to focus on the date that notice of forfeiture was received or published. See 21 U.S.C. § 853(n)(2). The record does not reflect that the government sent out a second notice following the date of criminal judgment. Regardless, Gray concedes that "[t]he government correctly supplied direct written notice and publication to several known owners and parties in interest during the summer of 2007, including Gray." Answer Brief of Patricia A. Gray at 19.

12

order of forfeiture or the final order of forfeiture entered at sentencing.

Yet, the plain language of Rule 32.2 suggests that the preliminary order of forfeiture process, including notice proceedings to third parties, may begin before sentencing and entry of a final criminal judgment. Rule 32.2(b) expressly provides that the forfeiture process should begin "[a]s soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted" with the district court determining what property is subject to forfeiture and "promptly" entering a preliminary order of forfeiture. Fed. R. Crim. P. 32.2(b)(1), (2). Rule 32.2(b) further provides that the "entry of a preliminary order of forfeiture authorizes the Attorney General (or a designee) to . . . commence proceedings that comply with any statutes governing third-party rights." Id. 32.2(b)(3). Rule 32.2(b) necessarily contemplates that this process may begin before sentencing because it specifies that "[a]t sentencing—or at any time before sentencing if the defendant consents—the order of forfeiture becomes final as to the defendant." Id.

The Advisory Committee Notes to the 1996 amendments to Rule 32 and the 2000 amendments adopting Rule 32.2 confirm that these rules were intended to allow the preliminary order of forfeiture process, including notice to third parties, to begin before sentencing. See United States v. Elmes, 532 F.3d 1138, 1144 n.7 (11th Cir. 2008) ("Although not binding, the interpretations in the Advisory

13

Committee Notes are nearly universally accorded great weight in interpreting federal rules." (quotation marks and citation omitted)).  In 1996, Rule 32 was amended to allow a district court to enter a preliminary order of forfeiture, which then authorized the government to begin ancillary proceedings.  See Fed. R. Crim. P. 32(d)(2) (1997).  Prior to this amendment, Rule 32 had been interpreted to mean that a forfeiture order could not be entered until sentencing.  See Fed. R. Crim. P. 32 advisory committee notes (1996 Amendments).  Lengthy delays between a verdict and sentencing had resulted in delayed forfeiture proceedings, however.  See id.  This in turn had caused serious problems, one being that third parties had to wait until the forfeiture order had been entered at sentencing before they could petition the court to begin ancillary proceedings.  See id.; see also United States v. Yeje-Cabrera, 430 F.3d 1, 15 (1st Cir. 2005) (stating that the advisory committee notes to Rule 32.2(b) "are concerned almost entirely with improving the procedure by which the relative ownership interests of the defendant and of third parties are determined.").  In addition, delays in forfeiture proceedings cost the government valuable time in locating assets which may become unavailable or unusable and force the government to seek restraining orders because it cannot actually seize the property until a forfeiture order is entered.  See Fed. R. Crim. P. 32 advisory committee notes (1996 Amendments).

14

The 1996 amendments to Rule 32 addressed these concerns "by specifically recognizing the authority of the court to enter a preliminary forfeiture order before sentencing." Id. But these amendments did not mandate the timing of entry of a preliminary order of forfeiture. Instead, "[e]ntry of an order of forfeiture before sentencing rests within the discretion of the court, which may take into account anticipated delays in sentencing, the nature of the property, and the interests of the defendant, the government, and third persons." Id. Likewise, the Advisory Committee Notes to the 2000 adoption of Rule 32.2, which incorporated Rule 32(d)(2), reiterate the government's authority under subdivision (b)(3) to begin an ancillary proceeding "once the court enters a preliminary order of forfeiture." Fed. R. Crim. P. 32.2 advisory committee notes (2000 Adoption). Thus, a primary purpose of the amendments to Rule 32 and the subsequent adoption of Rule 32.2 was to enable third parties to assert their interests in an ancillary proceeding prior to the entry of criminal judgment and sentencing.

Despite these extensive revisions of the Federal Rules of Criminal Procedure, § 853(n) still says "an order of forfeiture" or "property which has been ordered forfeited" and has not been updated to distinguish between a preliminary order of forfeiture and a final order of forfeiture. We may not disregard Rule 32.2, however. "The Federal Rules of Criminal Procedure have the force and effect of

15

law.  Just as a statute, the requirements promulgated in these Rules must be obeyed." United States v. Gilbert, 244 F.3d 888, 915 n.66 (11th Cir. 2001) (quotation marks and citation omitted).

We see no conflict between § 853 and Rule 32.2 and believe the two can easily be harmonized.  The language of § 853 referring to "an order of forfeiture" or "property which has been ordered forfeited" is broad enough to encompass both a preliminary order of forfeiture and a final order of forfeiture.  And when Rule 32.2 is read in tandem with § 853, the references to "an order of forfeiture" or "property which has been ordered forfeited" in § 853(n)(1) and (2) logically include a preliminary order of forfeiture.[5]  That is, once a preliminary order of forfeiture is entered, whether before or at the time criminal judgment is entered, the government is authorized to commence proceedings governing third-party rights and must publish notice of that order and its intent to dispose of the property.  See 21 U.S.C. § 853(n)(1); Fed. R. Crim. P. 32.2(b)(3).  A third party then has thirty days from the receipt of notice of the preliminary forfeiture order or the final publication of notice of the latter, whichever is earlier, within which to petition the

_____

[5]At least two of our sister circuits have reached similar conclusions.  See Grossman, 501 F.3d at 848-49 (affirming dismissal for untimeliness of third-party petition filed five months after receipt of preliminary forfeiture order); United States v. Stone, No. 06-11293, 2008 WL 5422837, at *1-4 (5th Cir. Dec. 31, 2008) (per curiam) (unpublished) (affirming dismissal for untimeliness of third-party petition filed over two months after receipt of preliminary forfeiture order).

16

court for an ancillary hearing. See id. § 853(n)(2). Again, this thirty-day period will begin to run from the triggering date, even if it is before criminal judgment is entered. The failure to file a petition within this thirty-day time period extinguishes a third-party's interests. See id. § 853(n)(7); Fed. R. Crim. P. 32.2(c)(2). We believe this interpretation is faithful to the plain language of Rule 32.2 and § 853, the purpose behind the amendment of Rule 32 and the adoption of Rule 32.2, and, importantly, congressional intent, as reflected by its decision not to veto or modify the provisions in Rule 32.2 (and formerly Rule 32) creating the preliminary order of forfeiture procedures.[6] See Gonzalez v. Sec'y for Dep't of Corr., 366 F.3d 1253, 1270 (11th Cir. 2004) (en banc) (discussing interplay of Federal Rule of Civil Procedure 60(b) and the Antiterrorism and Effective Death Penalty Act and explaining, "Congress allowed Rule 60(b) to be created through

[6]We do not suggest that a district court must enter a preliminary order of forfeiture before sentencing. As noted above, the district court has the discretion to determine when entry of an order of forfeiture is in the best interests of all of the parties. Nor do we suggest that a district court must hold an ancillary hearing before entering criminal judgment if a third-party petition has been filed. Section 853(n)(4) instructs that an ancillary hearing shall be held within thirty days of the filing of a third-party petition, but specifies that this rule applies "to the extent practicable and consistent with the interests of justice." 21 U.S.C. § 853(n)(4). A district court may conclude that is in the interests of justice to wait until after entering criminal judgment to hold the ancillary hearing if, for example, the court believes that it may grant a defendant's motion for judgment of acquittal or a new trial and that it would be a waste of resources to hold an ancillary hearing before it rules on the motion.

Instead, we say only here that: (1) a district court may enter a preliminary order of forfeiture before criminal judgment is entered; (2) if the district court does so, the government is authorized to commence proceedings governing third-party rights; and (3) if the government does so before criminal judgment is entered, the requirement that third parties file their petition asserting a legal interest in the forfeited property within thirty days of notice applies equally.

17

the Rules Enabling Act process, see generally, 28 U.S.C. §§ 2071-2077, by not exercising its legislative authority to veto or modify that rule, see § 2074. Congress can supercede Rule 60(b) or any other rule promulgated through the rules process by actively asserting its legislative authority to enact provisions that govern procedure.").[7]

Now that we have explained how § 853 and Rule 32.2 are naturally read together to allow for the third-party petition process to begin before criminal judgment has been entered when the district court has entered a preliminary order of forfeiture, we still must explain why two of our precedents in this area do not dictate a different result. First, in United States v. Pease, 331 F.3d 809, 813 (11th Cir. 2003), we stated that the government only acquires a convicted defendant's interest in forfeited property when the district court orders the interest forfeited as part of its criminal judgment (a point not in dispute here). Here, the district court relied on Pease in reasoning that an ancillary hearing could not occur until after the government had obtained its interest from Marion on 19 September 2007 and thus that her claim was timely filed within thirty days of the date the government acquired Marion's interest. See Pease, 331 F.3d at 810 ("Once the defendant's

_____

[7]Further, to the extent it is argued that § 853 conflicts with Rule 32.2, the rule must trump. See 28 U.S.C. § 2072(b) ("All laws in conflict with such rules shall be of no further force or effect after such rules have taken effect.").

18

interest in the subject property is forfeited by the entry of a final judgment, any person (other than the convicted defendant) claiming an interest in the property may commence an ancillary proceeding in the district court by petitioning the court pursuant to 21 U.S.C. § 853(n)(2) to enter an order declaring that his or her interest is superior to the defendant's interest (which the final judgment forfeited to the United States).").

We agree with the government that Pease does not control the outcome here because it involved different issues than those presently before us. At issue in Pease was: (1) whether a criminal forfeiture must be made part of the criminal judgment adjudicating the defendant's guilt and imposing a sentence, and (2) if so, does the district court's failure to include a forfeiture order in its judgment constitute a "clerical mistake" within the meaning of Federal Rule of Criminal Procedure 36. Id. at 812. After addressing the first question and concluding that the issuance of a preliminary order of forfeiture does not relieve the district court of the obligation to include an order of forfeiture in its judgment, the Pease court turned to a discussion of when third-party petitions may be filed. See id. at 813-14. The Pease court, however, was not presented with a question of whether the third-party petitions filed in that case were timely filed or the broader question of whether the government is authorized under Rule 32.2(b)(3) to issue notice and

19

begin ancillary proceedings when a preliminary order of forfeiture is entered before entry of a final criminal judgment.  Accordingly, any comments on that issue are dicta and non-binding precedent.  See Swann v. S. Health Partners, Inc., 388 F.3d 834, 837 (11th Cir. 2004); Great Lakes Dredge & Dock Co. v. Tanker Robert Watt Miller, 957 F.2d 1575, 1578 (11th Cir. 1992).

Second, our discussion in Gilbert of when third-party petitions may be filed also does not require a different conclusion here.  Gilbert addressed, in part, whether a district court's order of forfeiture that was entered after the jury's forfeiture verdict, but before the district court entered a criminal judgment and imposed a sentence, was the "order of forfeiture" required to begin ancillary proceedings under 18 U.S.C. § 1963(l).[8]  Gilbert, 244 F.3d at 926.  The Gilbert court concluded that it was not because "section 1963(l) ancillary proceedings are held so that innocent third-party owners can get their interests back from the government" and thus "ancillary proceedings – which are activated under [§] 1963(l) by an order of forfeiture – could not take place without the government's seizure of the property, which is authorized under [§] 1963(e) and [Federal Rule of Criminal Procedure] 32(b)(2) by a judgment of forfeiture."  Id.  Because "it is clear

---

[8]Section 1963 is the penalty statute for crimes under the Racketeer Influenced and Corrupt Organizations Act.  Section 1963(l) has language addressing the filing of third-party claims that is essentially identical to 21 U.S.C. § 853(n).

from the forfeiture scheme that the judgment, rather than the order, must come first" and "the judgment may not be entered until sentencing," the Gilbert court deduced "the 'order of forfeiture' required by section 1963(l) also may not be entered until sentencing." Id.

The forfeiture order at issue in Gilbert, however, was entered in 1990. This was before the 1996 amendments to Rule 32(d) and the 2000 adoption of Rule 32.2, discussed supra. These amendments authorized a district court to determine the property subject to forfeiture and enter a preliminary order of forfeiture "[a]s soon as practicable after a verdict or finding of guilty, or after a plea of guilty or nolo contendere is accepted." Fed. R. Crim. P. 32.2(b)(1), (2). Rule 32.2 further provides that "[t]he entry of a preliminary order of forfeiture authorizes the Attorney General . . . to commence proceedings that comply with any statutes governing third-party rights." Id. 32.2(c). Because Gilbert addressed a forfeiture order that was entered before the Federal Rules of Criminal Procedure authorized preliminary orders of forfeiture, Gilbert's discussion of the timing of the commencement of third-party proceedings is also not on point.

Returning to this case, based on § 853, read in tandem with Rule 32.2, we conclude that Gray's petition was not timely filed. It is undisputed that Gray received proper written notice of the preliminary order of forfeiture on 18 June

2007 and that the last date of published notice of the preliminary forfeiture order was 3 July 2007. Pursuant to 21 U.S.C. § 853(n)(2), the earlier date of 18 June 2007 started the thirty-day clock. It is also undisputed that Gray filed her petition on 4 October 2007, well over three months after receiving her notice. Accordingly, Gray's petition was untimely. See 21 U.S.C. § 853(n)(2). The district court therefore erred in denying the government's motion to dismiss on grounds that Gray filed her petition within thirty days that criminal judgment was entered against Marion.

B. Waiver and Timeliness of the Government's Motion to Dismiss

We also reject the district court's remaining grounds for denial of the government's motion to dismiss. The district court concluded that the government had waived the issue of timeliness by not asserting it in the motion for continuance of the ancillary hearing. A defense to a claim for relief must be asserted in a responsive pleading only if a responsive pleading is required, however. See Fed. R. Civ. P. 12(b). Where a pleading does not require a response, "an opposing party may assert at trial any defense to that claim." Id. Here, neither § 853 nor Rule 32.2 required the government to file a responsive pleading asserting its defenses to a third-party petition. See 21 U.S.C. § 853; Fed. R. Crim. P. 32.2. The fact that the government failed to raise the issue of untimeliness in its motion for

22

continuance did not waive the issue. Accordingly, the district court erred in concluding that the government had waived the issue of timeliness and in denying the government's motion to dismiss on this basis.

Nor was the government's motion to dismiss untimely. While Rule 32.2 suggests the timing of a court's disposition of a motion to dismiss, it does not set forth requirements for when a motion to dismiss must be filed. Specifically, under Rule 32.2(c)(1)(A), the court in the ancillary proceeding "may, on motion, dismiss the petition" for any lawful reason. Fed. R. Crim. P. 32.2(c)(1)(A). Rule 32.2(c)(1)(B) permits the court to allow discovery "[a]fter disposing of any motion filed under Rule 32.2(c)(1)(A) and before conducting a hearing." Id. 32.2(c)(1)(B). When a motion to dismiss is filed before discovery or a hearing, it "should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." Pacheco v. Serendensky, 393 F.3d 348, 352 (2d Cir. 2004). Once discovery ends, "a party may move for summary judgment under Federal Rule of Civil Procedure 56." Fed. R. Crim. P. 32.2(c)(1)(B). As the government concedes, the better practice may be to file the motion to dismiss before discovery and the ancillary hearing. There is no requirement that this be done, however. The district court thus erroneously based its denial of the government's motion to dismiss on a finding that the motion was untimely.

### III. CONCLUSION

We conclude that the district court should have granted the government's motion to dismiss Gray's third-party petition for untimeliness. Gray's failure to file her petition within thirty days of her receipt of the preliminary forfeiture order notices extinguished her interests in the Zana Drive properties under § 853(n) and Rule 32.2(c)(2). The government did not waive the issue of timeliness and its motion to dismiss was not untimely. Accordingly, the district court erred in denying the government's motion to dismiss and in granting Gray's petition. The court further abused its discretion in denying the government's motion to amend the judgment. We therefore REVERSE and REMAND for additional proceedings consistent with this opinion.

**REVERSED AND REMANDED.**